IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| CHARLES PAUL SLAGLE, | ) | CASE NO. 5:12-CV-00626 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) | |

Plaintiff Charles Paul Slagle ("Slagle" or "Plaintiff") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Doc. 1. This case is before the undersigned Magistrate Judge pursuant to the consent of the parties. Doc. 13. Because it is unclear whether the Mental Status Questionnaire, which was given no weight by the Administrative Law Judge ("ALJ"), was authored by a physician and because the Administrative Law Judge's analysis of that Questionnaire is not explained sufficiently, the Court is unable to conclude that the Commissioner's decision is supported by substantial evidence. Accordingly, the Court **REVERSES AND REMANDS** the final decision of the Commissioner for further proceedings consistent with this Opinion and Order.

## I. Procedural History

On June 6, 2009, Slagle protectively filed applications for DIB and SSI alleging disability as of May 22, 2009. Tr. 106-107, 181, 188, 236, 251. He alleged disability based on affective

1

disorders, personality disorders, major depression, alcohol dependency, bipolar disorder, anxiety and back pain.  Tr. 106-109, 117, 121, 131, 135, 251.   After initial denial by the state agency (Tr. 117-123) and denial upon reconsideration (Tr. 131-144), Slagle requested a hearing (Tr. 149-150), and an administrative hearing was held before an ALJ on January 12, 2011 (Tr. 37-68).

In his January 21, 2011, decision (Tr. 17-36) the ALJ determined that Slagle had not been under a disability from May 22, 2009, through the date of the ALJ's decision.[1]  Tr. 29.  Slagle requested review of the ALJ's decision by the Appeals Council and, on February 22, 2012, the Appeals Council denied Slagle's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-6.

## II. Evidence

**A.    Personal and Vocational Evidence**

Plaintiff was born on May 2, 1970.  Tr. 181, 188, 201, 236.  Although he attended special education classes, he successfully graduated from high school.  Tr. 58, 210.  He is divorced and has no children.  Tr. 47.  His past work includes work as a factory laborer[2] (Tr. 41, 50, 55) and as a construction worker (Tr. 55).  Although he is not paid, he has performed volunteer work at New Destiny Treatment Center in exchange for a place to live.  Tr. 273, 297, 710.  He has a history of DUIs, disorderly conduct, and domestic violence.  Tr. 52, 440, 443-444.  He was incarcerated for cutting a cat's paw off.  Tr. 43-44, 52.

---

[1] Plaintiff has indicated that, as of the day after the ALJ's unfavorable decision, he was awarded benefits on a new application.  Doc. 15-1, p. 22.

[2] He was terminated from his most recent job as a factory laborer in 2008 or 2009 for drinking while at work.  Tr. 41, 50, 55.

**B.     Medical Evidence**

Plaintiff's mental health diagnoses[3] include major depressive disorder, recurrent, moderate (Tr. 583), alcohol dependence (Tr. 583, 584), bi-polar I and schizophrenia (Tr. 606), anxiety and depression (Tr. 668), schizophrenia undifferentiated type (Tr. 711).  The record shows a history of alcohol abuse but also reflects sobriety following completion of treatment. 42, 584, 608, 823.

While there are numerous medical opinions, reports and treatment records contained in the administrative record, the opinions central to this Appeal are contained in Exhibit 14F.  Tr. 603-608.  Exhibit 14F was considered by the ALJ but given no weight.  Tr. 27, Tr. 603-608. Exhibit 14F consists of six (6) pages, including a Mental Status Questionnaire as well as a Daily Activities Questionnaire.  Tr. 603-608.  Included as part of Exhibit 14F are two pages with two different signatures: Dr. James D. Phillips, M.D. (Tr. 604) and counselor Don Slaughter (Tr. 608).[4]  The date of Dr. Phillips' signature is January 4, 2010.  Tr. 604.  The date of Mr. Slaughter's signature is December 17, 2009.  Tr. 608.

The Mental Status Questionnaire reflects that the "medical history, including dates of treatment" occurred from "11-19-2008 - to present."  Tr. 606.  The Mental Status Questionnaire includes the following opinions regarding Plaintiff's abilities: he is incapable of remembering, understanding and following directions; he has ADHD; he is incapable of sustaining concentration, persisting at tasks, and completing tasks in a timely fashion; his social interaction is impaired because of his antisocial personality; he is not capable of adapting because he needs constant supervision; and, when asked how the Plaintiff would "react to pressures, in work

---

[3] Plaintiff's appeal does not challenge the ALJ's findings relative to his physical impairments.  Doc. 17, p. 2.

[4] In Exhibit 14F, Dr. Phillips' signature page appears in front of the Mental Status Questionnaire whereas Mr. Slaughter's signature appears on the last page of the Daily Activities Questionnaire which follows the Mental Status Questionnaire.

settings or elsewhere, involved in simple and routine, or repetitive, tasks," it is noted that he "would never be able to function."  Tr. 606.

The Daily Activities Questionnaire reflects that Mr. Slaughter first saw Plaintiff in December 2008.  Tr. 608.  The Daily Activities Questionnaire indicates that Plaintiff needs very specific instructions and supervision; he appears capable of food preparation, household chores and shopping; he can drive or ride on a bus; he rarely takes showers; he may need assistance with bill paying and banking; he enjoys fishing as a hobby; he keeps his appointments; and he successfully completed 9 months of drug and alcohol treatment.  Tr. 607-608.

**C.     Testimonial Evidence**

Slagle was represented by counsel and testified at the administrative hearing.  Tr. 41-52, 55-56, 57-60, 65-66.

A Vocational Expert ("VE") also testified at the hearing.  Tr. 53-55, 56-57, 60-65.  The ALJ asked the VE whether there would be jobs available in the local or national economy to a hypothetical individual with Plaintiff's age, education, work experience and RFC to perform medium level work that is simple, repetitive, and routine with low production quotas or interaction with others on an intermittent basis in a relatively static environment.  Tr. 60.  After indicating that Plaintiff's past relevant work would not be available to such an individual, the VE stated that the following jobs would be available to such an individual: industrial cleaner – medium, unskilled job (more than 1 million jobs available nationally and more than 50,000 jobs available in Ohio); laundry worker – medium, unskilled job (80,000 jobs available nationally and 3,000 jobs available in Ohio); and kitchen helper – unskilled job (300,000 jobs available nationally and 14,000 jobs available in Ohio).[5]  Tr. 60-61.

---

[5] Upon inquiry by the ALJ, the VE also indicated that such an individual would be able to perform the sedentary job of a security surveillance monitor.  Tr. 61.

Plaintiff's counsel asked the VE whether his opinion would change if the hypothetical individual described by the ALJ was also unable to sustain concentration, persist at tasks, complete tasks in a timely fashion, or get along well with supervisors and co-workers, and could never be around the public.  Tr. 64.  The VE indicated that, if the limitations occurred more than occasionally, then such a person could not perform full-time, competitive work.  Tr. 64.  In response to Plaintiff's counsel's further inquiry, the VE indicated that, if the hypothetical individual would decompensate if outside of a sheltered residential environment, such an individual would be unable to maintain competitive employment.  Tr. 64-65.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

    2.        If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

    3.        If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

    4.        If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

    *5.*        If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to establish whether the claimant has the Residual Functional Capacity ("RFC") and vocational factors to perform work available in the national economy.  *Id.*

### IV. The ALJ's Decision

In his January 21, 2011, decision, the ALJ determined that:

1.        Plaintiff meets the insured status requirements through March 31, 2012. Tr. 22.

2.        Plaintiff has not engaged in substantial gainful activity since May 22, 2009, the alleged onset date. Tr. 22.

3.        Plaintiff has the following severe impairments: degenerative disc disease, an affective disorder, and a personality disorder. Tr. 22-23.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the Listed impairments.[6]  Tr. 23-24.

5. Plaintiff has the RFC to perform medium work except he is limited to simple, repetitive, and routine work, with low production quotas, where interaction with others would be on an intermittent basis, in a relatively static environment where changes could be explained.  Tr. 24-28.

6. Plaintiff is unable to perform any past relevant work.  Tr. 28.

7. Plaintiff was born on May 2, 1970, and was 39 years old, defined as a younger individual age 18-49, on the alleged disability onset date.  Tr. 28.

8. Plaintiff has at least a high school education and is able to communicate in English.  Tr. 28.

9. Transferability of job skills is not an issue because the Plaintiff's past relevant work is unskilled.  Tr. 28.

10. Considering the Plaintiff's age, education, work experience, and RFC there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform, including industrial cleaner, laundry worker and kitchen helper.  Tr. 28-29.

Based on the foregoing, the ALJ determined that Slagle had not been under a disability from May 22, 2009, through the date of the decision.  Tr.  29.

## V. Parties' Arguments

### A. Plaintiff's Arguments

First, Plaintiff argues that the ALJ erred in determining that his mental impairments did not meet or medically equal Listing 12.03.  Doc. 15-1, pp. 12-16.  He asserts that his mental impairments satisfy both Listing 12.03(B) and Listing 12.03(C).[7]  Doc. 15-1, pp. 12-16.

---

[6] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  20 C.F.R. § 404.1525.

[7] Slagle acknowledges that to satisfy Listing 12.03, he must show that he meets 12.03(A) and (B) together or 12.03(C) by itself.  Doc. 15-1, pp. 12-13.  He specifically addresses 12.03(B) and 12.03(C) but does not address 12.03(A) other than to note that his "persistent auditory and visual hallucinations are well-documented" and that the ALJ did not address 12.03(A).  Doc. 15-1, p. 13.

7

Second, Plaintiff argues that there is "new and material" evidence that establishes Plaintiff's disability and that a remand is appropriate for consideration of the "new and material" evidence. Doc. 15-1, pp. 16-20.

Third, Plaintiff argues that the ALJ failed to state valid reasons for not assigning controlling weight to a treating source medical opinion. Doc. 15-1, pp. 20-22, Doc. 18, pp. 5-6. Specifically, Plaintiff argues that the ALJ did not properly consider the Mental Status Questionnaire, which Plaintiff asserts was filled out and signed by Dr. Phillips. Doc. 15-1, p. 20, Doc. 18, pp.5-6.

**B.     Defendant's Arguments**

The Commissioner argues that Plaintiff has failed to prove that his mental impairments met or medically equaled Listing 12.03; the ALJ adequately addressed Plaintiff's mental impairments under the Listings; and the ALJ's conclusion that Plaintiff's mental impairments did not meet or medically equal a Listing is supported by substantial evidence. Doc. 17, pp. 9-15.

The Commissioner also argues that Plaintiff has failed to demonstrate that the alleged "new and material" evidence is in fact "new and material" or that there was "good cause" for why the documents were not submitted to the ALJ. Doc. 17, pp. 15-17. Accordingly, the Commissioner argues that a remand is not appropriate for consideration of the alleged "new and material" evidence. Doc. 17, pp. 15-17.

Finally, the Commissioner argues that the ALJ did not err in his consideration of the Mental Status Questionnaire that Plaintiff asserts was signed by Dr. Phillips.[8] Doc. 17, pp. 17-19. Moreover, the Commissioner argues that, even if Dr. Phillips did complete and sign the form, the ALJ's conclusion that counselor Don Slaughter signed the form is harmless error

---

[8] Respondent contends, and the ALJ apparently believed, that the Mental Status Questionnaire was signed by counselor Don Slaughter rather than by Dr. Phillips.

8

because the ALJ nonetheless provided good reasons for giving no weight to Exhibit 14F. Doc. 17, p. 19, FN 5.

### VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**A.    Because the ALJ's stated reasons for not providing weight to the opinions set forth in Exhibit 14F are not sufficiently explained, the treating physician rule is not satisfied and the Court is unable to find that the Commissioner's decision is supported by substantial evidence.**

Slagle asserts that the Mental Status Questionnaire was completed by Dr. Phillips, a treating physician, not counselor Don Slaughter. Doc. 15-1, pp. 20-22; Doc. 18, pp. 5-6. Thus, Slagle argues that the ALJ incorrectly concluded that the Menta l Status Questionnaire (Tr. 605-606) was completed by counselor Don Slaughter, an "unacceptable medical source" and that, as a result, the ALJ violated the treating physician rule by not providing controlling weight to Dr. Phillips' opinion. (Doc. 15-1, pp. 20-22; Doc. 18, pp. 5-6). In response, the Defendant argues that the ALJ properly concluded that both the Mental Status Questionnaire and Daily Activities Questionnaire were completed by counselor Don Slaughter, an "unacceptable medical source" and, even if the ALJ was incorrect in reaching this conclusion, the error was harmless because the ALJ articulated "good reasons" for giving no weight to the opinions set forth in Exhibit 14F.

Doc. 17, pp. 17-19.

Under the treating physician rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).  The Commissioner's regulations impose a clear duty always to give good reasons in its notices of determinations or decisions for the weight given to treating source opinions.  *Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 937 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2)).  "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (quoting Soc. Sec. Rul. No. 96-2p, 1996 SR LEXIS 9, at *12 (Soc. Sec. Admin. July 2, 1996)) (internal quotations omitted). "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Id.*  Further, "the requirement safeguards a reviewing court's time, as it 'permits meaningful' and efficient 'review of the ALJ's application of the treating physician rule.'" *Id.* at 938 (citing *Wilson*, 378 F.3d at 544).  Where a treating source's opinion is not provided controlling weight, certain factors must be applied by the ALJ to determine what weight should be given to the treating source's opinion.[9] *Bowen v. Comm'r of Soc Sec.*, 478 F.3d 742, 747 (6th Cir. 2007).

An "ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*,

---

[9] The factors to be considered are: (1) the length of the treatment relationship and the frequency of the examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the source, and (6) any other factors which tend to support or contradict the opinion. *Bowen*, 478 F.3d at 747; 20 C.F.R. §§ 404.1527(d), 416.927(d).

661 F.3d at 939-940 (citing *Blakely v. Comm'r of Soc Sec*, 581 F.3d 399, 407 (6th Cir. 2009) (internal quotations omitted)).  Inasmuch as 20 C.F.R. § 404.1527(d)(2) creates important procedural protections for claimants, failure to follow the procedural rules for evaluating treating physician opinions will not be considered harmless error simply because a claimant may appear to have had little chance of success on the merits.  *Wilson*, 378 F.3d at 546-547.

Here, the ALJ gave the following reasons for not providing controlling weight to Exhibit 14F: (1) the opinion was not from an acceptable source as approved by the Commissioner;[10] (2) there were inconsistent statements within Exhibit 14F; and (3) the opinion was not supported by mental status findings or functional evidence.  Tr. 27.

Exhibit 14F consists of six (6) pages.  Tr. 603-608.  One of those pages is a signature page containing the signature of James D. Phillips, M.D.  Tr. 604.  The ALJ makes no mention of this page and provides no explanation for how, if at all, he considered it when weighing Exhibit 14F.  Tr. 27.  Without a more detailed explanation from the ALJ as to why he determined that Exhibit 14F, in its entirety, was completed by counselor Don Slaughter, rather than a portion also being completed or approved by Dr. Phillips, the Court cannot find that the ALJ's decision to give no weight to the opinions in Exhibit 14F on the basis that the opinions are from an "unacceptable medical source" is supported by substantial evidence.

The Defendant asserts that, even if Exhibit 14F was completed or signed by Dr. Phillips, any error by the ALJ in treating Exhibit 14F as not being from an acceptable medical source is

---

[10] Acceptable medical sources are—
  (1) Licensed physicians (medical or osteopathic doctors);
  (2) Licensed or certified psychologists;
  (3) Licensed optometrists;
  (4) Licensed podiatrists; and
  (5) Qualified speech pathologists.

20 C.F.R. § 404.1513(a).

harmless because the ALJ's other reasons for giving no weight to the opinions contained therein were good reasons.[11] Doc. 17, p. 19, FN 5. The Court disagrees. Without an explanation as to why the ALJ disregarded the M.D. signature on Exhibit 14F, the Court cannot say for certain that the ALJ's other reasons are "good reasons."

For example, the ALJ's reference to inconsistent statements is the result of two different Questionnaires being included in Exhibit 14F. The statement that Plaintiff is incapable of remembering and that he has ADHD are contained in the Mental Status Questionnaire within Exhibit 14F (Tr. 606) whereas the statement that the Plaintiff "needs very specific instructions and supervision" is contained in the Daily Activities Questionnaire within Exhibit 14F (Tr. 607). If there were different authors of the two Questionnaires contained within Exhibit 14F, as it appears there may have been,[12] the ALJ's analysis of Exhibit 14F could be different as could the Court's analysis of the ALJ's reasons. Thus, because it is unclear whether there was one or two authors of the Questionnaires within Exhibit 14F and in the absence of an explanation by the ALJ of his reasons for finding only one author, the Court cannot determine whether the ALJ's other reasons are "good reasons."

The final reason for the ALJ's decision to provide no weight to the opinions in Exhibit 14F is that the opinion "is not supported by any mental status findings or functional evidence." Tr. 27. The ALJ states that the opinion that Plaintiff "would never be able to function" contained

---

[11] The Defendant also asserts that there is no indication that Dr. Phillips treated Plaintiff during the relevant period. Doc. 17, p. 19. Thus, Defendant argues that Dr. Phillips was not a treating physician entitled to controlling weight. Doc. 17, p. 19. However, there are treatment records that reflect that a Dr. Phillips has treated Plaintiff. Tr. 570-577, 650-669, 717-718, 781-787. The Court notes a difference in signatures between the document signed on January 4, 2010, by a Dr. James D. Phillips, M.D. (Tr. 604) and the medical treatment records signed by a Dr. James E. Phillips, M.D. (Tr. 575, 651) and a difference in middle initials (Tr. 604 (middle initial D.) and Tr. 575, 651 (middle initial E.)). These differences raise a question, i.e., are there two different Dr. Phillips who are connected to this case? The Court is not in a position to resolve this question. *See Garner*, 745 F.2d at 387 (a court "may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility").

[12] It appears that one Questionnaire may have been signed by Dr. James D. Phillips while the other Questionnaire may have been signed by counselor Don Slaughter.

in the Mental Status Questionnaire of Exhibit 14F is not supported by mental status findings or functional evidence because the Daily Activities Questionnaire indicated that Plaintiff is capable of food preparation, household chores, shopping, driving, or riding on a bus; and the Daily Activities Questionnaire indicated that Plaintiff keeps his appointments and successfully completed nine months of drug and alcohol treatment. Tr. 27. As noted above, if there were different authors of the two Questionnaires in Exhibit 14F, the ALJ's analysis of Exhibit 14F could be different as could the Court's analysis of the ALJ's reasons. The Court also notes that that the Mental Status Questionnaire requires and includes a description of Plaintiff's "mental status." Tr. 605. However, the ALJ does not explain why these "mental status" findings do not support the opinions as to Plaintiff's abilities that are contained within that same Questionnaire. Tr. 606. The ALJ should have more fully explained his reasons and the Court should not and will not speculate as to why the ALJ reached the conclusions he reached.

Because the reasons offered by the ALJ for not providing controlling weight to the Mental Status Questionnaire contained within Exhibit 14F are not fully explained and do not provide the court sufficient information to determine whether those reasons are "good reasons," the Court is unable to conclude that there is substantial evidence to support the ALJ's decision. *Cole*, 661 F.3d at 939-940; *see also Wilson*, 378 F.3d at 546-547 (a failure to follow the procedural rules for evaluating treating physician opinions will not be considered harmless error simply because a claimant may appear to have had little chance of success on the merits.) Accordingly, this case is remanded for proper application of the treating physician rule.

**B.     Other Issues**

Plaintiff raises two additional arguments. He requests a remand for the purpose of considering alleged "new and material" evidence and he requests a remand on the basis that the

13

ALJ did not properly consider Plaintiff's impairments at Step Three.  Since the Court has found Plaintiff's treating physician argument to be persuasive and a basis for reversal and remand it is not necessary for the Court to address Plaintiff's other two arguments

## VII. Conclusion

For the foregoing reasons, the final decision of the Commissioner denying Plaintiff Charles Paul Slagle's applications for DIB and SSI is **REVERSED AND REMANDED** for further proceedings consistent with this Opinion and Order.[13]

Dated: February 7, 2013

Kathleen B. Burke
United States Magistrate Judge

---

[13] This Opinion and Order is not nor should it be construed as an order requiring a determination on remand that Slagle was in fact disabled during the relevant period.

14